IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT T. NELSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-1741-N |
| | § | |
| UNIVERSITY OF TEXAS | § | |
| AT DALLAS, *et al.*, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court is Plaintiff Robert Nelson's Motion to Vacate Judgment, pursuant to Federal Rule of Civil Procedure 59 [25]. Nelson contends this Court's November 1, 2006 Order ("November 1 Order"), dismissing Nelson's claims against Defendant David E. Daniel in his official capacity pursuant to Rule 12(b)(1) and (6), is contrary to clearly established law, i.e., (according to Nelson) every other court to consider this question for the last hundred years. The Court thus must discuss at some length a proposition most would find obvious: wrongful termination under the FMLA is a discrete act, not a continuing wrong. The Court finds Nelson's motion both procedurally and substantively deficient and therefore denies the motion.

**I. PROCEDURAL BACKGROUND TO NELSON'S RULE 59 MOTION**

Defendant University of Texas at Dallas ("UTD") terminated Nelson allegedly because, following approved leave, Nelson failed to return to work and failed to notify anyone of the need for additional absences. Nelson filed this action against Defendants

ORDER – PAGE 1

UTD, Karen M. Jarrell, Vivian Rutlege, and David E. Daniel (collectively "Defendants"), alleging violations of the personal leave provisions of the Family Medical Leave Act ("FMLA"). Specifically, Nelson claims Defendants discharged him, or otherwise discriminated against him, for exercising his right to leave under the FMLA. Nelson further claims he was entitled to return to the same position he held when his leave commenced. Nelson seeks economic relief of $630,000 for lost benefits as a result of Defendants' alleged violation of FMLA. With regard to Daniel, Nelson invokes *Ex parte Young*, 209 U.S. 123 (1908), and seeks injunctive relief, including hiring, reinstatement, and/or promotion.

Defendants moved to dismiss Nelson's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6). The Court dismissed Nelson's claims against all defendants but Daniel in its August 30, 2006 Order. As to Daniel, the Court denied the motion as moot, because Daniel sought dismissal in his individual capacity and Nelson sued Daniel in his official capacity.

Daniel then filed a second motion to dismiss in which he argued that Nelson's claims against Daniel in his official capacity were jurisdictionally barred. In deciding Daniel's motion to dismiss, the Court focused on whether Nelson alleged a continuing violation of federal law. The Court explained that plaintiffs may invoke *Ex parte Young* to "enjoin state officials to conform their future conduct to the requirements of federal law," *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (quoting *Quern v. Jordan*, 440 U.S. 332 (1979)), provided they bring suit (1) against a state official, seeking (2) only prospective injunctive relief (3) in order to end a "continuing violation of federal law." *Seminole Tribe*

*of Fla. v. Florida*, 517 U.S. 44, 73 (1996) (citations omitted). Because the alleged violation – retaliation for exercising his right to leave – was a discrete, one-time event, Nelson failed to allege the third element of the prima facie case. Accordingly, this Court granted Daniel's motion to dismiss. Nelson now files this motion to vacate and amend the November 1 Order.

## II. NELSON'S MOTION FAILS THE RULE 59 PROCEDURAL REQUIREMENTS

Rule 59(e) affords courts the discretion to reconsider a judgment, provided the movant shows "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). The party cannot use the motion as a means to "raise arguments [that] could, and should, have been made before the judgment issued." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990)). In the Fifth Circuit, Rule 59 motions are considered "an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

Nelson in his Rule 59 motion seeks to reargue the *Ex parte Young* issue, now supporting his position with new arguments and citation to different authority. Nelson claims he is entitled to reargue the point because Defendant Daniel did not raise the continuing violation issue until his reply brief. That no doubt was because Nelson did not raise *Ex parte Young* until his response to the second motion to dismiss. In invoking *Ex parte Young* as a reason to deny Daniel's motion to dismiss on sovereign immunity grounds, Nelson acknowledged that a continuing violation of federal law was an element of the doctrine he

ORDER – PAGE 3

must establish to avoid dismissal. *See* Resp. at 3. Daniel's reply did nothing more than point out that Nelson had failed to establish the elements of the exception he invoked to avoid dismissal.[1] Accordingly, Nelson's motion fits squarely within the category of motions that raise arguments that could, and should, have been made before judgment issued. The Court therefore denies the motion on this basis. Because the motion is also substantively deficient, the Court will discuss the merits as well.

### III. NELSON FAILS TO ESTABLISH A CLEAR ERROR OF LAW

Nelson argues that the November 1 Order was contrary to clearly established law because reinstatement is prospective relief that remedies a continuing violation of federal law under *Ex parte Young*. Nelson boldly claims this Court's November 1 Order is contrary to every court to consider the issue since *Ex parte Young*, in 1908. Brief at 2. A more accurate characterization of Nelson's cited cases would be that many courts dealing with other substantive rights have found reinstatement to be proper prospective relief under *Ex parte Young*. But the November 1 Order dismissed Nelson's claim for failure to allege a continuing violation of federal law, *not* for failure to seek prospective injunctive relief – the remedy was not the issue.[2] Given Nelson's arguments, the Court must discuss at some greater length the principles of *Ex parte Young*. The Court will then apply those principles

---

[1] Moreover, almost a month elapsed between Daniel's reply brief and the Court's Order granting the motion to dismiss, during which time Nelson could have requested leave to file a surreply brief.

[2] "Despite clearing the first two *Ex parte Young* hurdles, [i.e., a claim (1) against a state official for (2) *prospective relief*,] Nelson ultimately fails to allege a continued federal law violation." November 1 Order at 7.

to Nelson's claims under the FMLA. Finally, the Court will discuss the cases that Nelson claims demonstrate error in this Court's November 1 Order.

### A. *The Purpose of* Ex parte Young *Claims*

It is well-established that the Eleventh Amendment[3] affords nonconsenting states constitutional immunity from suit in both federal and state courts. *See, e.g.*, *Alden v. Maine*, 527 U.S. 706, 748 (1999); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71, (1989); *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir.1996). "The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002) (citing *In re Ayers,* 123 U.S. 443, 505 (1887)); *see also* ALEXIS DE TOCQUEVILLE, DEMOCRACY IN AMERICA 66 (Arthur Goldhammer trans., Library of America 2004) (1840) ("In short, there are twenty-four small, sovereign nations, which together form the great body of the Union."). "The founding generation thought it 'neither becoming nor convenient that the several States of the Union, invested with that large residuum of sovereignty which had not been delegated to the United States, should be summoned as defendants to answer the complaints of private persons." *Fed. Mar. Comm'n*, 535 U.S. at 760 (quoting *Alden,* 527

---

[3]"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The actual text of the amendment does not seem to play a central role in Eleventh Amendment jurisprudence: "To rest on the words of the Amendment alone would be to engage in the type of ahistorical literalism we have rejected in interpreting the scope of the States' sovereign immunity since the discredited decision in *Chisholm* [*v. Georgia*, 2 U.S. 419 (1793)]." *Alden*, 527 U.S. at 730.

U.S. at 748). Similarly, state officials enjoy immunity. Because a state cannot act but through its officials, a suit against a state official in his or her official capacity is, de facto, a suit against the state. *McCarthy*, 381 F.3d at 414 (stating that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and thus the state) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71(1989)). However, the Eleventh Amendment's proscription is not absolute.

Recognizing that the Eleventh Amendment threatened to render federal courts powerless to prevent state violations of the Constitution, the Supreme Court carved out a narrow exception in *Ex parte Young*, permitting courts to grant injunctive relief against state officers to preserve the Constitution as the "supreme law of the land." *Alden*, 527 U.S. at 747; *see also McCarthy*, 381 F.3d at 412 (5th Cir. 2004) ("Under *Ex parte Young*, 'a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law.'") (quoting *Quern v. Jordan*, 440 U.S. 332, 337 (1979)). The theory behind *Ex parte Young*, according to the Supreme Court, is that "use of the name of the State to enforce an unconstitutional act to the injury of complaintants is a proceeding without the authority of . . . the State in its sovereign or governmental capacity." *Ex parte Young*, 209 U.S. at 159-60.

Of course, in carving out this exception, the Supreme Court constructed an "an obvious fiction." *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 270 (1997). In a case decided the same day as *Ex parte Young*, the Supreme Court explained that it is "an obvious consequence that as a State can only perform its functions through its officers, a restraint

ORDER – PAGE 6

upon them is a restraint upon its sovereignty from which it is exempt . . . in the state tribunals, and exempt by the Eleventh Amendment of the Constitution of the United States, in the national tribunals." *General Oil Co. v. Crain*, 209 U.S. 211, 226-27 (1908). Accordingly, courts must judiciously invoke *Ex parte Young* and endeavor towards a "proper balance between the supremacy of federal law and the separate sovereignty of the States." *Alden*, 527 U.S. at 757; *see Papasan v. Allain*, 478 U.S. 265, 277 (1986) (The Supreme Court has "described certain types of cases that formally meet the *Young* requirements but that stretch that case too far and would upset the balance of federal and state interests that it embodies."). "Were it otherwise, the Eleventh Amendment, and not *Ex parte Young*, would become the legal fiction." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 649 (2002) (Kennedy, J., concurring).

The Supreme Court has curtailed *Ex parte Young*'s diminution of the Eleventh Amendment by limiting its availability to only extraordinary circumstances. According to the Supreme Court, extraordinary circumstances are those in which a suit is filed (1) against a state official, (2) seeking only prospective injunctive relief (3) to end a "continuing violation of federal law." *Seminole Tribe of Fla.*, 517 U.S. at 73 (citations omitted). Furthermore, "[a]pplication of the *Young* exception must reflect a proper understanding of its role in our federal system . . . instead of a reflexive reliance on an obvious fiction." *Coeur d'Alene Tribe*, 521 U.S. at 270. The Supreme Court explained:

> To interpret *Young* to permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle . . . that Eleventh Amendment immunity

> represents a real limitation on a federal court's federal-question jurisdiction. The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading.

*Id.* (citations omitted).

At bottom, the most important consideration when invoking *Ex parte Young*'s exception is understanding *Ex parte Young*'s "proper role in our federal system": the balance of fidelity to federal law with respect for states as sovereign entities, meaning suit will only be allowed to end *continuing* violations of federal law. *See Papasan*, 478 U.S. at 277-78 ("*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past . . . ."). Accordingly, to invoke *Ex parte Young*'s narrow exception to sovereign immunity, a party must do more than simply pray for prospective injunctive relief; he must also allege a *continuing* violation of federal law. Courts must then carefully scrutinize such allegations to ensure they in fact are continuing violations. *See Coeur d'Alene Tribe*, 521 U.S. at 269 (Courts must "ensure that the doctrine of sovereign immunity remains meaningful . . . ." ); *see also Papasan*, 478 U.S. at 278 ("For Eleventh Amendment purposes, the line between permitted and prohibited suits will often be indistinct . . ."); *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) ("Federal courts may not award retrospective relief, for instance, money damages or its equivalent, if the State invokes its immunity."); *Guardians Ass'n v. Civil Serv. Comm'n of N.Y.*, 463 U.S. 582, 604 (1983) ("[I]n the Eleventh Amendment context . . . the relief cannot include a monetary award for past wrongs, even if the award is in the form of 'equitable restitution' instead of damages.").

### B. Rights versus Remedies

In accordance with these principles, the Court must take the requirement of showing a continuing violation of a federal right as a meaningful limitation on federal jurisdiction, or else the *Ex parte Young* exception will swallow the Eleventh Amendment rule of state sovereign immunity. Conceptually, there is a clear distinction between rights and remedies. *Cf. McAvey v. Lee*, 260 F.3d 359, 367 n.4 (noting distinction in context of Louisiana direct action statute; citing 1 DAN B. DOBBS, DOBBS LAW OF REMEDIES §§ 1.1-1.10 (2d ed.1993) [hereinafter DOBBS]). Admittedly, in some cases the distinction between right and remedy can be as elusive as the distinction between substance and procedure. *Cf. Hanna v. Plumer*, 380 U.S. 460 (1965) (noting difficulty in distinguishing between substance and procedure in *Erie* context). However, the fact that such line drawing may be difficult in some cases does not mean there is no difference, or that courts are free to recharacterize remedies as rights. *See Papasan*, 478 U.S. at 278 ("Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant."). Several principles should guide this Court in determining whether there is a continuing violation of a federal right.

First, the exception in *Ex parte Young* is a narrow one. *Seminole Tribe of Fla.*, 517 U.S. at 76. It is also a judicially created exception to black letter constitutional law (the Eleventh Amendment) and to an overarching concept underlying our constitutional structure

(federalism). It would thus follow that in a close case, any doubts should be resolved in favor of the Constitution and federalism.

Second, the requirement of a continuing violation of a federal right is a substantive requirement, not a formal requirement that can be evaded by artful pleading. *Coeur d'Alene Tribe*, 521 U.S. at 270 ("interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading"). Thus, the fact that forward-looking injunctive relief is sought does not alone show that there is a continuing violation of a federal right. That would subsume the third *Ex parte Young* requirement into the second; moreover, injunctive relief is often available to redress completed wrongs.[4] Also, a party cannot by artful pleading transform the failure to provide a remedy for a completed, past wrong into the continuing violation of the "right" to that remedy. Otherwise a clever draftsman could transform a claim for money damages into a continuing violation of a right to just compensation. A court thus must look at the source of the asserted right, rather than at the characterization of the right in the pleadings and briefs.

Third, the breadth of the right may vary depending on the source of the right. If a constitutional right is at stake, it may be appropriate to characterize the right broadly, in order to vindicate and give expression fully to the constitutional provision.[5] The process should

---

[4]*See, e.g.*, DOBBS § 2.9, at 225 (discussing "reparative" injunctions).

[5]There are many areas of constitutional law in which doctrines are read broadly to afford full vindication of a constitutional right. *See, e.g.*, *United States v. Calandra*, 414 U.S. 338, 348 (1974) (explaining that the Exclusionary Rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved"); *Oregon v. Elstad*, 470 U.S. 298,

be much different when considering a statutory right, as the statute itself will usually (though not always) describe the right that is given, and, ideally, specify what remedies are provided to vindicate that right.

Fourth, whether a violation is continuing may be informed by the common law doctrine of a continuing tort. That doctrine provides that the statute of limitations does not begin to run if there is a continuing series of wrongful acts that cause continuing damages. A single wrongful act that causes continuing damages is not a continuing tort. Nor is the continuing refusal to remedy a past wrong a continuing tort. *See, e.g.*, *Terrebone Sch. Parish Bd. v. Mobil Oil Co.*, 310 F.3d 870, 885 (5th Cir. 2002) (Louisiana law); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-18 (distinguishing discrete acts from continuing conduct in Title VII context).

With these principles in mind, the Court turns to Nelson's claims.

### *C. Nelson Does Not Assert a Continuing Violation of a Federal Right*

Nelson claims that as an employee of UTD, he was statutorily eligible for leave under the FMLA, 29 U.S.C. §§ 2601–54. In April 2005, Nelson experienced tragedy when his son

---

306-07 (1985) ("The *Miranda* exclusionary rule . . . serves the Fifth Amendment and sweeps more broadly than the Fifth Amendment itself. It may be triggered even in the absence of a Fifth Amendment violation."); *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 590 (11th Cir. 1997) ("[T]he injury requirement [for standing] is most loosely applied when a plaintiff asserts a violation of First Amendment rights based on the enforcement of a law, regulation or policy."); *Cheffer v. Reno*, 55 F.3d 1517, 1523 n.12 (11th Cir. 1995) ("[T]he doctrine of ripeness is more loosely applied in the First Amendment context."). *But see Silveira v. Lockyer*, 328 F.3d 567, 568 (9th Cir. 2003) (Kozinski, J., dissenting from denial of rehearing en banc) (noting danger of judges injecting personal views into Constitution by reading some provisions broadly and some narrowly).

committed suicide and a week later Nelson was badly injured by an uninsured driver who ran a red light. Nelson's physician directed him to take leave from work, and eventually the proper forms were submitted to UTD. While Nelson was on leave, UTD notified him on June 7 that he was fired effective June 3 for not showing up for work on three consecutive days. *See* Compl. ¶¶ 8-14. Nelson complains that his termination was both an unlawful violation of his substantive right to leave, 29 U.S.C. § 2615(a)(1), and unlawful retaliation for assertion of leave rights, *id.* § 2615(a)(2).

First, the Court must identify the rights that the FMLA provides. In section 2601, Congress expressly stated: "It is the purpose of this Act . . . to entitle employees to take reasonable leave for medical reasons . . . ." *Id.* § 2601(b)(2). Likewise, section 2612 (titled "Leave Requirement") provides the substantive right at issue: "Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: . . . (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id.* § 2613(a)(1)(D). It is abundantly apparent that the federal right created by the Family and Medical Leave Act is, unsurprisingly, a right to leave.[6]

The Court must now consider whether the Complaint alleges a continuing violation of Nelson's right to FMLA leave.[7] The act that Nelson alleges violated his right to leave, and

---

[6]There are, of course, other substantive provisions of the FMLA that are not at issue in this case.

[7]The Court is somewhat embarrassed to answer so laboriously a question that would seem trivially simple to anyone not blessed with a legal education.

ORDER – PAGE 12

that Nelson alleges constitutes retaliation, was his termination. From a common sense perspective – which *should* still inform the law – termination in no way, shape, or form constitutes a continuing violation of Nelson's right to leave.[8] It was a single, discrete act that was complete when Nelson was terminated. *Cf. Papasan*, 478 U.S. at 277-78 ("*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past . . . ."). This result is consistent with the continuing tort doctrine in the statute of limitations context. The failure to remedy a prior wrongful act is not a continuing tort. *See Terrebone*, 310 F.3d at 885. If it were otherwise, then limitations under the FMLA for wrongful termination would not accrue at the time of the wrongful termination. *See Rossi v. Toyota Motor Mfg. Ky., Inc.*, 2006 WL 3390426 at *4 (E.D. Ky. November 22, 2006) (finding Plaintiff's FMLA claims barred by the statute of limitations and explaining, "[w]hen applying the statute of limitations to a plaintiff's wrongful termination action, courts have held that the cause of action accrues when the plaintiff receives notice that his employment is being terminated, regardless of when his employment is actually terminated."); *see also Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (holding that "the proper focus is on the time

---

[8]One can imagine an allegation that Daniel daily calls Nelson and says, "You still can't have leave; you're still fired." Such an allegation would not transform the substance of a claim of a discrete wrong into a continuing tort, and Nelson, of course, makes no such allegation. In fact, other than identifying Daniel as the "administrative head" of UTD in the description of the parties, the Amended Complaint is devoid of any mention of Daniel. It does not even make a pro forma allegation that Daniel refuses to reinstate Nelson. Because that omission could easily be cured by amendment, the Court is treating the Amended Complaint as if it asserted a complaint against Daniel in his official capacity for refusal to reinstate Nelson.

ORDER – PAGE 13

of the *discriminatory* act, not the point at which the consequences of the act become painful") (emphasis in original); *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987) (plaintiff's 28 U.S.C. § 1983 cause of action based on wrongful termination accrued on the date of termination). This is consistent, at least in spirit, with the Supreme Court's recent decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, — U.S. — (May 29, 2007). In *Ledbetter*, the Supreme Court held that a Title VII pay discrimination claim was not a continuing tort in which each lesser paycheck continued the discrimination, but rather a discrete wrong that occurred when compensation was set; if unequal pay is not a continuing violation, then wrongful discharge is surely not a continuing violation. Finally, this result is also consistent with a view of *Ex parte Young* as a narrow, judicially created exception to the Eleventh Amendment. *Seminole Tribe of Fla.*, 517 U.S. at 76.[9]

### D. Nelson's Contrary Authority Is Inapposite

In his motion for rehearing, Nelson for the first time presented the Court with an impressive-looking list of cases he alleged were contrary to the Court's November 1 Order. Closer inspection reveals, however, that only one of those cases is truly on point. First, many

---

[9]Nelson has apparently abandoned his claim for violation of his statutory right to reinstatement following leave. *See* 29 U.S.C. § 2614(a)(1). He does not mention that claim in either his original response to Daniel's motion to dismiss or his Rule 59 motion. At first blush, it might appear that the reinstatement claim would fare better, as the right to reinstatement could be more easily characterized as a right to employment that has been continually violated. On closer inspection, though, the statutory right is not one for continuing employment, but rather a discrete right to reinstatement following the completion of leave. That right, like Nelson's wrongful termination claim, was violated, if at all, at the completion of the twelve week period. Because Nelson has failed to argue, and therefore waived, any claim that his reinstatement cause of action states a claim for a continuing violation, the Court will not address that issue any further.

of the cases either fail to address the continuing violation prong of an *Ex parte Young* claim,[10] or concern an alleged violation other than wrongful termination.[11] *Warnock v. Pecos County*, 88 F.3d 341 (5th Cir. 1996), which Nelson claims is controlling, did not consider or address whether a wrongful termination claim alleges a continuing violation of federal law, and thus is not binding precedent on that point.

---

[10]*See Warnock v. Pecos County*, 88 F.3d 341 (5th Cir. 1996); *Hander v. San Jacinto Junior Coll.*, 519 F.2d 273 (5th Cir. 1975), *aff'd per curiam on rehearing*, 522 F.2d 204 (5th Cir. 1975); *Owens v. Bd. of Regents of Tex. S. Univ.*, 953 F. Supp. 781 (S.D. Tex. 1996); *Muhammed v. Bd. of Supervisors of S. Univ.*, 715 F. Supp. 732 (M.D. La. 1989); *Hillis v. Stephen F. Austin State Univ.*, 486 F. Supp. 663 (E.D. Tex. 1980); *McWhinney v. Prairie View A&M Univ.*, 2006 WL 2253456 (S.D. Tex. Aug. 7, 2006); *Elizondo v. Univ. of Tex. at San Antonio*, 2005 WL 823353 (W.D. Tex. Apr. 7, 2005); *McLaurin v. Spell*, 2003 WL 22242840 (N.D. Miss. July 14, 2003); *Berrigan v. La. Dep't of Health & Human Servs.*, 1998 WL 2359 (E.D. La. Jan. 5, 1998); *see also Levenstein v. Salafsky*, 414 F.3d 767 (7th Cir. 2005); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836 (9th Cir. 1997); *Treleven v. Univ. of Minn.*, 73 F.3d 816 (8th Cir. 1996); *Fond du Lac Band of Chippewa Indians v. Carlson*, 68 F.3d 253 (8th Cir. 1995); *Gray v. Laws*, 51 F.3d 426 (4th Cir. 1995); *Wu v. Thomas*, 863 F.2d 1543 (11th Cir. 1989); *Dwyer v. Regan*, 777 F.2d 825 (2d Cir. 1985); *Skehan v. Bd. of Trs. of Bloomsburg State Coll.*, 590 F.2d 470 (3d Cir. 1978); *Lynn v. Colo. Dep't of Insts., Div. of Youth Servs.*, 15 Fed. Appx. 636 (10th Cir. 2001) (unpublished); *Isham v. Wilcox*, 10 Fed. Appx. 729 (10th Cir. 2001) (unpublished); *Florida v. United States*, 133 F. Supp. 2d 1280 (N.D. Fla. 2001).

[11]Even under a generous interpretation of "wrongful termination" the following cases fail: *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407 (5th Cir. 2004); *Brennan v. Stewart*, 834 F.2d 1248 (5th Cir. 1988); *Gay Student Servs. v. Tex. A&M Univ.*, 612 F.2d 160 (5th Cir. 1980); *Sellers v. Gex*, 1994 WL 148890 (E.D. La. April 20, 1994); *Carten v. Kent State Univ.*, 282 F.3d 391 (6th Cir. 2002); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989); *Kashani v. Purdue Univ.*, 813 F.2d 843 (7th Cir. 1987); *Hall v. Med. Coll. of Ohio at Toledo*, 742 F.2d 299 (6th Cir. 1984); *Mallett v. Wis. Div. of Vocational Rehab.*, 248 F.3d 1158 (7th Cir. 2000) (unpublished).

Of the remaining cases, most are section 1983 cases dealing with claimed violations of constitutional rights.[12] As discussed above, constitutional rights may need to be read broadly in order to vindicate fully the constitutional provision. So, equal protection under the Fourteenth Amendment may need to be particularized as a right to continued employment free from racial discrimination. If the constitutional right is conceived as a right to employment, then termination of employment can plausibly be viewed as a continuing violation of the right to employment.[13] Those prophylactic considerations are not at work when dealing with a statutory scheme.

---

[12]*See Papasan v. Allain*, 478 U.S. 265 (1986); *Meiners v. Univ. of Kan.*, 359 F.3d 1222 (10th Cir. 2004); *Turker v. Ohio Dep't of Rehab. & Corrs.*, 157 F.3d 453 (6th Cir. 1998); *Lassiter v. Ala. A&M Univ. Bd. of Trs.*, 3 F.3d 1482 (11th Cir. 1993) *aff'd in part and rev'd in part on other grounds*, 28 F.3d 1146 (11th Cir. 1994); *Coakley v. Welch*, 877 F.2d 304 (4th Cir. 1989); *McConnell v. Adams*, 829 F.2d 1319 (4th Cir. 1987); *Elliott v. Hinds*, 786 F.2d 298 (7th Cir. 1986); *Williams v. Kentucky*, 124 F.3d 201, (6th Cir. 1997) (unpublished).

[13]This apparently was the rationale in *Elliott v. Hinds*, 786 F.2d 298 (7th Cir. 1986), which is the direct or indirect parent of all the cases holding that wrongful discharge is a continuing violation under *Ex parte Young*. The sum total of the analysis on that point is:
> Elliott's alleged wrongful discharge is a continuing violation; as long as the state official keeps him out of his allegedly tenured position the official acts in what is claimed to be derogation of Elliott's constitutional rights.

*Id.* at 302. The *Elliott* court cited no authority supporting that proposition and did not provide any further elaboration for its *ipse dixit*; the quoted sentence is embedded in the middle of a paragraph discussing whether reinstatement is prospective relief, so it is possible that the *Elliott* court inadvertently conflated the two distinct requirements. Subsequent courts simply cited *Elliott* or its progeny without further analysis. The Fifth Circuit has never followed *Elliott* on that point. This Court today need not decide whether on reflection it should follow *Elliott*, as it is sufficient for the case at hand to observe that *Elliott* dealt with vindication of a constitutional right not at issue in this case.

Most of the remaining statutory cases cited by Nelson fall under the ADA.[14] It is at least arguable that one of the rights conferred by the ADA is a right to employment. *See* 42 U.S.C. § 12101(a) (documenting congressional findings in ADA that individuals with disabilities are denied opportunity to participate in national economy due to discrimination in jobs); *id.* § 12112(a) (prohibiting disability discrimination in employment). As discussed above, when the federal right at issue is a right to employment, it is plausible to view termination as a continuing violation of the right to employment. Thus, given the difference in the statutory purpose of the FMLA, i.e. leave, the ADA cases are not controlling here.

When the inapposite cases are excluded, Nelson is left with exactly two cases holding that a claim for reinstatement under the FMLA falls within the narrow *Ex parte Young* exception to Eleventh Amendment immunity. First, Nelson cites *Hibbs v. Department of Human Resources*, 273 F.3d 844 (9th Cir. 2001), *aff'd on other grounds sub nom.*, *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721 (2003). In *Hibbs*, a former employee sued Nevada state agency officials, alleging violations of the FMLA. While the crux of the Ninth Circuit's opinion dealt with congressional abrogation of sovereign immunity, it also touched briefly on the applicability of *Ex parte Young* under the FMLA. The Ninth Circuit noted that by liberally construing Hibbs's brief, the issue was presented, although neither the district court nor the defendant addressed the question. *Id.* at 871. The

---

[14]Americans with Disabilities Act, 42 U.S.C. §§ 12101-12181. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407 (5th Cir. 2004); *Carten v. Kent State Univ.*, 282 F.3d 391 (6th Cir. 2002); *Faibisch v. Univ. of Minn.*, 304 F.3d 797 (8th Cir. 2002); *Koslow v. Pennsylvania*, 302 F.3d 161 (3d Cir. 2002); *Frazier v. Simmons*, 254 F.3d 1247 (10th Cir. 2001).

Court's total analysis of the issue follows: "Reinstatement is one of the remedies that Hibbs seeks, and reinstatement is the sort of prospective injunctive relief for which a state officer can be held liable. *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839-42 (9th Cir.1997)." *Id.* The *Doe* case cited in support of the proposition was a section 1983 case that addressed only the prospective relief prong of *Ex parte Young*, and completely failed to consider the continuing violation prong. *Doe*, 131 F.3d at 839-42. *Hibbs* thus does not conflict with this Court's decision because the defendant in *Hibbs* failed to raise any continuing violation argument and *Hibbs* did not consider that issue.

Finally, Nelson cites one case holding that a wrongful termination claim under the FMLA states a claim for a continuing violation of federal law. *Montgomery v. Maryland*, 266 F.3d 334 (4th Cir. 2001), *vacated on other grounds*, 535 U.S. 1075 (2002). In *Montgomery*, the Fourth Circuit allowed the plaintiff's *Ex parte Young* claim to proceed because the plaintiff alleged a violation of her right to restoration under FMLA section 2614(a)(1)(A)-(B). The Fourth Circuit's complete analysis was:

> This claim can proceed because Montgomery's complaint alleges an ongoing violation of federal law. *See Ex parte Young*, 209 U.S. 123(1908); *Edelman* [*v. Jordan*], 415 U.S. [651,] 664 [(1974)]; *South Carolina* [*State*] *Ports* [*Authority v. Federal Maritime Commission*], 243 F.3d [165,] 170 [(4th Cir. 2001)].

266 F.3d at 341. Neither *Edelman* nor *South Carolina State Ports Authority* provides any support for the cited proposition.[15] This aspect of *Montgomery*, like *Elliott*, *see supra* note

---

[15]Moreover, *Montgomery* was dealing with a substantive claim for reinstatement under the FMLA, *see* 29 U.S.C. § 2614(a)(1), rather than a claim of wrongful termination with reinstatement sought as a remedy. As discussed above, while a stronger case can be made

13, is at bottom pure *ipse dixit*. With deference to the Fourth Circuit, the Court finds that the lack of any analysis in *Montgomery* makes it unpersuasive, and the Court declines to follow it for the reasons stated above. *See supra* Part III.C.

## CONCLUSION

Nelson's Rule 59 motion is deficient, both procedurally and substantively. Accordingly, the Court denies the motion.

Signed June 7, 2007.

_____
David C. Godbey
United States District Judge

---

that a substantive FMLA reinstatement claim alleges a continuing violation of federal law, Nelson has abandoned that claim. *See supra* note 9.